UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BONNIE OWENS, et al,                      Case No. 14-11452

                    Plaintiffs,            Sean F. Cox
v.                                         United States District Judge

FEDERAL NATIONAL MORTGAGE                  Michael Hluchaniuk
ASSOCIATION,                               United States Magistrate Judge

                    Defendant.
_____/

## REPORT AND RECOMMENDATION
## MOTION TO DISMISS (Dkt. 5)

## I.    PROCEDURAL HISTORY

Defendant filed a motion to dismiss on May 27, 2014.  (Dkt. 5).  District

Judge Sean F. Cox referred this motion to the undersigned for report and

recommendation on May 29, 2014.  (Dkt. 6).  Plaintiffs filed a response on June

18, 2014.  (Dkt. 8).  Defendant filed a reply on July 2, 2014.  (Dkt. 12).  The

parties filed their joint statement on September 3, 2014.  (Dkt. 13).  The parties

have resolved plaintiffs' due process claim and agreed that it must be dismissed.

*Id*.  The Court entered a stipulated order of dismissal of Count II of plaintiffs'

complaint and dismissed the Federal Housing Financing Agency as a party in this

matter.  (Dkt. 14).  Pursuant to notice, the Court held a hearing on September 10,

2014.  (Dkt. 9).  This matter is now ready for report and recommendation.

1

For the reasons set forth below, the undersigned **RECOMMENDS** that defendant's motion to dismiss be **GRANTED**.

## II.    FACTUAL BACKGROUND

This case involves real property located at 2445 Burnside Street, Detroit, Michigan 48212 (the Property).  On December 20, 2004, plaintiffs received a loan from Vandyk Mortgage Corporation in the original principal amount of $64,850.00 (the Loan).  At closing, plaintiffs executed a note (the Note) and, to secure payment of the Loan, granted a mortgage (the Mortgage) on the Property to Mortgage Electronic Registration Systems, Inc. (MERS), as nominee for Vandyk and Vandyk's successors and assigns.  (Dkt. 5, Ex. 1, Note; Ex. 2, Mortgage).  The Mortgage was executed on December 20, 2004 and recorded on January 5, 2005 in Liber 41931, Page 848, Wayne County Records.  *Id*.

On April 21, 2008, MERS assigned its interest in the Mortgage to Wells Fargo Bank, N.A. (Wells Fargo) by Assignment of Mortgage (the Assignment).  (Dkt. 5, Ex. 3, Assignment).  The Assignment was recorded on April 24, 2008 in Liber 47181, Page 273, Wayne County Records.  *Id*.

In July 2012, plaintiffs failed to pay and defaulted on the Loan.  Subsequently, Wells Fargo commenced a foreclosure by advertisement.  Notice of the foreclosure was published pursuant to Mich. Comp. Laws § 600.3208 on December 11, December 18, December 25, 2012 and January 1, 2013.  (Dkt. 5, Ex.

4, Sheriff's Deed at Affidavit of Publication). Notice was also posted on the

Property on December 14, 2012. *Id*. On November 6, 2012, notice of the

borrowers' right to request mediation was served by regular and certified mail,

return receipt requested to plaintiffs. *Id*. Plaintiffs did not request a mediation

meeting. *Id*. On March 7, 2013, the Property was sold at Sheriff's sale to Wells

Fargo for the stated amount of $69,440.08. (Dkt. 5, Ex. 4) On March 18, 2013,

Wells Fargo executed a Quit Claim Deed transferring its interest in the Sheriff's

Deed to Fannie Mae. (Dkt. 5, Ex. 5, Quit Claim Deed). The Quit Claim Deed was

recorded on April 1, 2013 in Liber 50660, Page 681, Wayne County Records. On

September 7, 2013, the statutory redemption period expired with no redemption

being made. (Dkt. 5, Ex. 4, Affidavit of Purchaser).

On September 30, 2013, Fannie Mae filed a summary proceeding in the 36th

District Court seeking possession of the Property. Plaintiffs filed an Answer,

Affirmative Defenses and Counter-Complaint on October 31, 2013. The summary

proceeding is stayed pending the resolution of this litigation. The

Counter-Complaint was severed and removed to the Wayne County Circuit Court

and subsequently removed to the this Court. (Dkt. 1).

## III.   ANALYSIS AND CONCLUSION

### A.   Standard of Review

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must first

comply with Rule 8(a)(2), which requires "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007), quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957). A plaintiff is also obliged "to provide the grounds of his entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007), quoting, *Twombly,* 550 U.S. at 555 (citations and internal quotation marks omitted). And, while a complaint need not contain "detailed" factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Id.,* quoting *Twombly*, 550 U.S. at 555 (citation and internal quotation marks omitted); *see also League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (emphasis in original) (The factual allegations in a complaint need not be detailed but they "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief.").

The Sixth Circuit recognized that in *Erickson v. Pardus*, 551 U.S. 89 (2007), "a case decided just two weeks after *Twombly*, the Supreme Court clarified

4

*Twombly* by holding that a prisoner bringing a § 1983 claim against his captor is not required to state [s]pecific facts in their complaint; and *Twombly* itself suggests that its holding may be limited to cases likely to produce sprawling, costly, and hugely time-consuming litigation." *U.S. v. Ford Motor Co.*, 532 F.3d 496 (6th Cir. 2008) (citations and internal quotation marks omitted). The Sixth Circuit applied a more stringent pleading standard in *U.S. v. Ford* because a fraud claim was involved, which requires the application of the heightened pleading standard set forth in Rule 9(b), rather than the more liberal pleading standard found in Rule 8(a)(2). Thus, when applying *Twombly*, except as to a claim of fraud, the Court must still read plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519 (1972), and accept plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992); *Erickson*, 551 U.S. at 93-94 (The Court of Appeals improperly departed "from the liberal pleading standards set forth by Rule 8(a)(2)" and failed to "liberally construe" the *pro se* complaint at issue.).

"[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). Thus, it is permissible to

5

consider, in the context of a motion to dismiss, documents such as those relating to the mortgage transaction, assignment, and foreclosure because they are referenced in plaintiffs' amended complaint and are central to their claims. *Allen v. International Truck & Engine Corp.*, 2010 WL 749655, *2 (S.D. Ohio 2010); *see also Havenick v. Network Exp., Inc.*, 981 F.Supp. 480 (E.D. Mich. 1997) ("[T]he Court may properly consider, for the purposes of a Motion under Fed.R.Civ.P. 12(b)(6), the entirety of documents which Plaintiffs rely upon and quote in their Complaint without transforming the Motion into one for Summary Judgment."); *Greenberg v. Life Ins. Co. of Va.*, 177 F.3d 507, 514 (6th Cir. 1999) (when "a document is referred to in the complaint and is central to the plaintiff's claim ..., the defendant may submit an authentic copy to the court to be considered on a motion to dismiss."); *Crofton v. Bank of America Home Loans*, 2011 WL 1298747, *3 (E.D. Mich. 2011) (A court may also consider "matters of public record," such as documents recorded with the Register of Deeds when considering a motion to dismiss under Rule 12(b)(6)); *Bundy v. Federal Nat. Mort. Ass'n.*, 2011 WL 977531, *2 (E.D. Mich. 2011) (Given that the "the loan applications, mortgages, and notes attached to defendants' motion" were referred to in the complaint and were central to plaintiff's claims, they "are considered part of the pleadings, and the Court's consideration of these documents does not convert a motion to dismiss into one for summary judgment.").

B.    Standing and Fraud/Irregularity

According to defendant, plaintiffs do not have standing to challenge the

foreclosure of their Mortgage. *Conlin v. Mortgage Electronic Registration*

*Systems, Inc.*, 714 F.3d 355, 359 (6th Cir. 2013); *Bryan v. JP Morgan Chase Bank*,

304 Mich. App. 708; 848 N.W.2d 482 (2014).  The Sheriff's sale took place on

March 7, 2013, and plaintiffs failed to redeem the Property before the expiration

of the statutory redemption period.  Thus, defendant contends that "all the right,

title, and interest" in the Property vested in Wells Fargo (Mich. Comp. Laws

§§ 600.3240(8), 600.3236), and plaintiffs lost any "legal or equitable right, title or

interest in the subject matter of the controversy" on September 7, 2013.  *See*

*MOSES Inc. v. SE Michigan Council of Gov'ts*, 270 Mich. App. 401, 414; 716

N.W.2d 278 (2006).

Defendant also urges the Court to reject plaintiffs' argument that Wells

Fargo did not have a properly recorded interest in the Mortgage at the time of the

foreclosure.  (Dkt. 8, Response at pp. 10-13).  Defendant contends that plaintiffs

are wrong because the Mortgage was assigned to Wells Fargo on April 21,

2008—almost five years before the foreclosure.  (*See* Dkt. 5, Ex. 3, Assignment).

Although plaintiffs attempt to attack the assignment by arguing that "the signature

and the notarization of the assignment are suspect were (sic) not even completed

on the same day, let alone in the presence of a valid notary public," defendant

argues that plaintiffs' allegations are pure speculation (and likely an artifact from a prior brief since they address an unknown assignment from MERS to some other party). Moreover, defendant also points out that plaintiffs were offered an opportunity to participate in loan modification discussions, but they failed to request a meeting after receiving notice from Wells Fargo. (Dkt. 5, Ex. 4, Sheriff's Deed, Affidavit of § 600.3205 Notice). Thus, defendant maintains that there was no defect in the foreclosure process, and plaintiffs' Complaint should be dismissed because plaintiffs lack standing to sue.

According to plaintiffs, very much like the borrowers in *Galliard v. USAA Fed. Sav. Bank*, 2012 U.S. Dist. LEXIS 163211 (E.D. Mich. Nov. 15, 2012) (Dkt. 8-2), they attempted to obtain a modification, but were frustrated by defendant and its predecessor servicer. Plaintiffs contend that they relied on the misrepresentations of defendant by and through its agent, Well Fargo Home Mortgage acting as defendant's servicer. Plaintiffs say they were fraudulently induced into believing their loan was being reviewed when they was being blind-sided by a foreclosure. According to plaintiffs, their loan was allegedly assigned by MERS to BAC Home Loans, Inc., yet the signature and the notarization of the assignment are suspect and were not even completed on the same day, let alone in

the presence of a valid notary public.[1]

In the joint statement, plaintiffs contend that defendant did not comply with Mich. Comp. Laws § 600.3204.  However, plaintiff merely argues that "[t]he irregularity in this matter is [that] defendant by and through its servicing agent took payments from plaintiff the[n] placed the home in foreclosure despite taking the payments in the amounts requested by Defendant's servicing agent.  Moreover, the Defendant by and through its servicing agent purported to review the loan for loss mitigation, when it [in] actuality dual tracked the loan into foreclosure in express violation of the HAMP guidelines."  (Dkt. 13).  As explained in *Galliard*, a failure to satisfy Mich. Comp. Laws § 600.3204 is a "structural" defect such that the foreclosure is void *ab initio*.  In the view of the undersigned, plaintiffs do not allege an actual failure to comply with Mich. Comp. Laws § 600.3204, which permits a foreclosure by advertisement when (a) a default in a condition of the mortgage has occurred, by which the power to sell became operative; (b) an action or proceeding has not been instituted, at law, to recover the debt; (c) the mortgage containing the power of sale has been properly recorded; and (d) the party foreclosing the mortgage is either the owner of the indebtedness secured by the mortgage or the servicing agent of the mortgage.  Given that plaintiff makes no

---

[1]  Plaintiff appears to have abandoned this argument in the joint statement and at oral argument. In any event, there was no assignment – defective or otherwise – from MERS to BAC Home Loans, Inc. and the assignment in this case was properly recorded.

claim of a structural defect, the claim that the foreclosure is void *ab initio* is without merit.

As also explained in *Galliard*, in contrast to a structural defects, the validity of the foreclosure sale cannot be challenged even if it violates one of the notice requirement of Mich. Comp. Laws § 600.3212 if the mortgagor failed to challenge the foreclosure during the redemption period or any proceedings seeking an order of eviction, or if it were sold to a bona fide purchaser.  A defect in the notice, does, however render a foreclosure "voidable," which allows courts to examine "whether any harm was caused by the defect" such that the mortgagor lost the "potential opportunity to preserve some or any portion of his interest in the property."  *Galliard*, at *22, quoting *Jackson Inv. Corp. v. Pittsfield Prod. Inc.*, 162 Mich. App. 750, 755 (1987).  According to *Galliard*, this means that a defect in notice that harms plaintiff may constitute an irregularity that permits the Court to set aside the foreclosure sale.  In *Galliard*, the plaintiffs alleged that the notice was defective because it included the force-placed insurance premiums, which were later reduced because they were improperly high.  In *Galliard*, the Court found that to the extent an "accident or mistake" constitutes an "irregularity", the peculiar facts of that case constituted a sufficient irregularity to permit the plaintiffs to challenge the foreclosure.  Specifically, the excessive force placed insurance policy contributed to the default; the plaintiffs were denied a loan

10

modification because their monthly escrow payments, which included the force

placed insurance premiums, were to high for them to qualify; the excessive

amount claimed at the foreclosure sale was a result of the insurance policy force

placed by the ultimate purchaser; after the sheriff's sale, the amount of the

insurance was reduced and refunded to plaintiffs by the purchaser; the purchaser

bought the property for $135,000 when the balance on the principal was only

$85,000; and the purchaser refused to take any corrective action beyond providing

plaintiff with a refund of the funds they overpaid for the insurance.  Under these

circumstances, the Court denied the motion to dismiss.  *Id*.  The facts in this case

as alleged by plaintiff are so far from those in *Galliard* that the undersigned fails

to see how the notice was defective or that any other irregularity has been alleged

sufficient to preclude dismissal.

Defendant also points out that even if they had established such a defect,

plaintiffs have not demonstrated prejudice arising from the defect.  *Kim v. JP

Morgan Chase Bank, N.A.*, 493 Mich. 98, 115; 825 N.W.2d 329 (2012).  Under

Michigan law, such prejudice is defined as the loss of an opportunity to preserve

an interest in the property.  *Id*. at 115-16.  Plaintiffs do not claim that they were

deprived of any such opportunity as a result of the alleged defect.  Plaintiffs'

argument that they would have been in a better position to preserve their interest

absent defendant's violation of Mich. Comp. Laws § 600.3204 is entirely circular.

11

At best, plaintiff seems to allege that the signature on an assignment of the loan was "suspicious" but does not explain how this is a structural violation of § 3204.

Moreover, the Sixth Circuit recently rejected a nearly identical claim in *Bernard v. FNMA*, — Fed.Appx. —; 2014 WL 4800123 (6th Cir. 2014). The Court first observed that the plaintiff failed to identify any authority for the proposition that if a mortgagor qualifies for a loan modification, the lender is required to provide one. *Id*. at *3. While Mich. Comp. Laws § 600.3204(4)(f), prevents the initiation of a foreclosure proceeding where a modification has already been agreed to by the parties, the Court pointed out that nothing in the statute compels the parties to reach an agreement. *Id*. And, in any case, the Michigan courts have already held that even if a mortgagor meets the eligibility criteria for a modification, the lender is not required to grant the modification. *Id*. citing *Brown v. Wachovia Mortg.*, 2013 WL 6083906, at *5 (Mich. App. 2013). The *Bernard* Court also pointed out that Mich. Comp. Laws § 600.3205c(6) provides that if the modification statutes are complied with, and if the mortgagee is eligible for a modification, the foreclosure proceeding is not stopped, but merely converted from a foreclosure by advertisement into a judicial foreclosure. Accordingly, the Court concluded that the defendant's compliance with the modification statutes would not have put plaintiff in a "better position to preserve [her] interest in the property absent [defendants'] noncompliance with the statute."

*Id*., quoting *Kim*, 825 N.W.2d at 337. The undersigned finds nothing about plaintiff's claim to be distinguishable from that in *Bernard*, and therefore, it should be dismissed.

C.    HAMP/ESSA[2]

Defendant points out that there is no private right of action under HAMP and that despite couching this claim as one for negligence, the claim still fails. *See Hart v. Countrywide Home Loans, Inc.*, 735 F.Supp.2d 741, 748 (E.D. Mich. 2010) ("[A]ssuming Plaintiff is eligible for modification (which she is not) and assuming that the Lending Statutes impose a duty on Defendant to modify Plaintiff's mortgage (which they do not), the statutes do not create a private right of action under which Plaintiff may seek relief. 'There is no express or implied right to sue fund recipients . . . under TARP or HAMP.'"). In response, plaintiffs rely primarily on *Mik v. Federal Home Loan Mortgage Corporation*, 743 F.3d 149, 166-167 (6th Cir. 2014), which held that violations of a federal statute can be used "offensively" to establish a state law cause of action - here, plaintiffs claim negligence. According to defendant, plaintiffs' argument miss the point. Even if plaintiffs could establish a HAMP violation (which, according to defendant, they cannot because, among other reasons, their Loan was previously modified under

---

[2]   The Emergency Economic Stabilization Act (ESSA), which was the implementing statute for the Troubled Asset Relief Program (TARP), led to the creation of the Home Affordable Mortgage Program (HAMP), which encourages servicers to modify mortgages.

13

HAMP), HAMP does not give them a cause of action and it does not create any legal duty to modify plaintiffs' Loan.  According to defendant, plaintiffs were considered for loan modification programs on at least two occasions prior to their default.  Plaintiffs received relief on both occasions.  (Dkt. 12, Ex. 7, Forbearance Agreement, Ex. 8, Loan Modification).[3]  Even if plaintiffs were entitled to a third modification (which defendant contends they were not), neither Fannie Mae nor Wells Fargo was under any obligation to modify plaintiffs' Loan.  *See Hart v. Countrywide Home Loans, Inc.*, 735 F. Supp. 2d 741, 748 (E.D. Mich. 2010); Mich. Comp. Laws § 600.3205c(6).  According to defendant, plaintiffs are only entitled to one modification under HAMP and thus, the negligence claim fails.

In *Bernard*, the Sixth Circuit affirmed its holding in *Mik* and concluded that the plaintiff "correctly notes that she can still use 'violations of [these statutes] to establish [her] state law claims.'" *Bernard*, at *5, quoting *Mik*, 743 F.3d at 167; *see also Mik* at 165–67 (holding that a plaintiff may use violations of federal law "'offensively' to establish a state law cause of action" even where the statute does

---

[3] Plaintiff asserts that because this is a motion to dismiss, the Court cannot consider these exhibits.  However, plaintiff's complaint contains claims regarding the HAMP process, the alleged refusal to process her application, and she attaches a payment schedule which shows the reduced payments she was supposed to make beginning in May 2010, pursuant to the agreement signed in February 2010.  Under these circumstances, the undersigned concludes that the Court may consider these documents – which are part of the parties' contract and essentially referenced in plaintiff's complaint – without converting the motion to dismiss to a motion for summary judgment.  Notably, plaintiffs did not take any opportunity to challenge the content of these documents in the joint statement or before the hearing.  *See* Standard of Review, *supra*.

not provide for a private right of action under federal law, and expressly rejecting an argument similar to defendants'). The Court concluded that "plaintiff may raise HAMP and EESA violations as a defense to her foreclosure under state law." However, the Court also held that, under Michigan law, the plaintiff still must show prejudice arising from those violations, even assuming that she could show that the foreclosure violated HAMP. That is, the plaintiff must still show that she "would have been in a better position to preserve [her] interest in the property absent defendant's noncompliance with" those statutes. *Bernard*, at *5, quoting *Kim*, 825 N.W.2d at 337. The Sixth Circuit concluded that the plaintiff did not do so and, even assuming that the defendants did in fact violate HAMP, the plaintiff failed to allege that, absent the defendants' noncompliance she would have been able to keep the property and avoid the foreclosure. *Id*. Rather, the plaintiff simply argued that there were HAMP violations. The Court pointed out that this was insufficient under Michigan law. *Id*. As the Sixth Circuit had previously recognized, plaintiffs seeking to invalidate a foreclosure after the expiration of the redemption period must show "double liability" (i.e., a violation of the law and prejudice from that violation). *Id*., citing *Conlin v. Mortg. Elec. Registration Sys., Inc.*, 714 F.3d 355, 362 (6th Cir. 2013). Given that the plaintiff had not done so, the Court concluded that the district court did not err by dismissing the plaintiff's claims as to HAMP violations. *Id*. Again, as stated above, plaintiffs here have not

shown any prejudice as required under *Kim*.  That is, they have not explained how,

absent defendant's alleged noncompliance with HAMP, they would have been

able to keep the property and avoid foreclosure.  Thus, the negligence claim based

on HAMP fails under *Bernard*.

### 3.     Count IV - Fair Housing Act

According to defendant, plaintiffs' claim for violation of the Fair Housing

Act relates, at least in part, to the origination of the loan in 2004.  These claims are

prohibited by the applicable two year statute of limitations.  42 U.S.C.

§ 3613(a)(1)(A) (providing that a claim under the Fair Housing Act must be

brought within two years of the occurrence of the alleged discriminatory act); *see*

*also Mekani v. Homecomings Fin., LLC*, 752 F.Supp.2d 785 (E.D. Mich. 2010)

(recognizing the two year statute of limitations, and barring a claim based on

alleged actions which occurred over two years prior at the origination of a loan).

Defendant also asserts that plaintiffs' claim fails for a second reason—their

allegations are conclusory and speculative and they fail to meet the pleading

requirements under Rule 12(b)(6).  According to defendant, plaintiffs offer mere

conclusory and speculative statements regarding discrimination without

supporting those allegations with specific facts that would allow the Court to

conclude that there was some sort of discrimination.  Defendant contends that

these allegations are impermissibly speculative, and plaintiffs' claim should be

16

dismissed.

In response, plaintiffs say they allege discrimination based on race in the modification process, not the origination of the loan. Plaintiffs contends that defendant and its servicing agent Wells Fargo discriminated against plaintiffs by failing to fairly and properly evaluate plaintiffs for a loan modification, and then catalyzing the default, despite that fact they were making payments during the loan modification process. (Dkt. 1, Complaint, Exs. 2, 8-10). According to plaintiffs, this claim is within the statute of limitations, and defendant's deliberate effort to mischaracterize the claims must be recognized and defendant's baseless assertion rejected. According to plaintiffs, they clearly pleaded in the complaint that plaintiffs are members of a protected class applied for and qualified for a loan modification and the application was denied, and in this case not even processed. (Dkt. 1, Complaint).

In reply, defendant points out that plaintiffs neglect to mention that they have been approved for at least two loss mitigation options. (Dkt. 12, Ex. 7, Forbearance Agreement, Ex. 8, Loan Modification). Although plaintiffs speculate that there were race-based reasons that they did not receive another modification (Dkt. 8 at pp. 13-19), defendant maintains that plaintiffs' allegations are wrong. Rather, plaintiffs failed to comply with the terms of the Loan Modification when they defaulted in July 2012. The Loan Modification had already lowered

17

plaintiffs' monthly payment to $215.22, with an interest rate that was already at the statutory floor of 2.00%, and an amortization period that was near the maximum of 40 years.  (Dkt. 12, Ex. 8, at ¶ 2).  Finally, plaintiffs failed to request a mediation meeting and did not avail themselves of the protection of the statute they now attempt to rely on.  (Dkt. 12, Dkt. 5, Ex. 4).  According to defendant, plaintiffs were afforded every opportunity to retain their residence, and their claims regarding racial discrimination are without merit.

Plaintiffs do not offer any authority to support a claim that defendant was obligated to process a third HAMP loan modification.  And, if defendant had no obligation to process a third application for relief under HAMP, its failure to do so could not be discriminatory.  *See e.g.*, *Lugo-Berrios v. Citibank, N.A.*, 2013 WL 1314752 (D. P.R. 2013) (Where a plaintiff does not qualify for a HAMP modification, she failed to demonstrate a prime facie case of national origin discrimination); *see also*, *Sheriff v. Deutsche Bank Nat. Trust Co.*, 2011 WL 1496152 (D. Ariz. 2011) ("Plaintiffs' attempts to state a claim under the FHA fail for a few reasons: 1) Plaintiffs did not allege that they qualified for a loan modification; 2) they do not identify Mrs. Sheriff's handicap; and 3) they have not alleged that Defendants approved a loan modification for a similarly situated party around the same time Defendants did not respond to Plaintiffs' request for a modification.").  As the Sixth Circuit explained in *Bernard*, the plaintiff's raced-

18

based FHA claims failed because she failed to allege facts that she was qualified for a loan modification, which is an "essential element of her [FHA] claim." *Id*. at *5. The Court concluded that where the plaintiff failed to allege she was qualified for a loan modification or that the defendant offered modifications to those outside of the protected class while denying them to her, the FHA claim failed as a matter of law. A review of Count IV of the Complaint reveals that plaintiff does not allege that she qualified for a third loan modification under HAMP. In addition, while plaintiff's complaint contains allegations of disparate racial treatment in the origination of loans by Wells Fargo and its servicer, she does not claim that she was treated differently than similarly-situated persons of other races as it relates to the processing her HAMP loan modification requests. Thus, this claim fails under *Bernard*.

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that defendant's motion to dismiss be **GRANTED**.[4]

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right

---

[4] Given the foregoing conclusions, plaintiffs' claim for exemplary damages also fails.

of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: October 31, 2014                    s/Michael Hluchaniuk
                                          Michael Hluchaniuk
                                          United States Magistrate Judge

## <u>CERTIFICATE OF SERVICE</u>

I certify that on <u>October 31, 2014</u>, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to all counsel of record.

<u>s/Tammy Hallwood</u>
Case Manager
(810) 341-7887
tammy_hallwood@mied.uscourts.gov